UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-20931-CIV-HUCK

MICHAEL I. GOLDBERG, as Receiver
for Worldwide Entertainment, Inc.,
The Entertainment Group Fund, Inc.,
American Enterprises, Inc., and
Entertainment Funds, Inc.,

    Plaintiff,

v.

LYN CHONG, KEVIN KARL WILLS, JR.
and UNIVERSAL ENTERTAINMENT, LLC

    Defendants.

_____/

**ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

THIS MATTER is before the Court upon Plaintiff's Motion for Partial Summary Judgment [D.E. #69], filed on May 31, 2007. The Court has reviewed the parties' submissions and is duly advised in the premises.

**I.    Background**

    **A.    The Receivership**

On April 16, 2006, the Securities and Exchange Commission ("SEC") filed a Complaint in the United States District Court for the Southern District of Florida against Worldwide Entertainment, Inc. ("Worldwide"), the Entertainment Group Fund, Inc. ("TEGFI"), American Enterprises, Inc ("AEI"), Entertainment Funds, Inc. ("EFI"), John P. Utsick ("Utsick"), and Robert and Donna Yeager (collectively "Yeagers").[1] In that Complaint, the SEC alleged that Utsick and the Yeagers sold unregistered securities in the form of loan agreements or units in special purpose limited

---

[1] Utsick was the principal of Worldwide. TEGFI, EFI and the Yeagers were the principals of AEI.

1

liability companies to raise funds for a variety of entertainment ventures, violating various sections of the Securities Act of 1933 and the Securities Exchange Act of 1934. *See SEC v. Utsick*, No. 06-20975-CIV-HUCK/SIMONTON (S.D. Fla. Apr. 16, 2006) (the "Receivership Case"). On April 20, upon the request of the SEC, the Court entered an Order Appointing Receiver. Plaintiff, Michael Goldberg (the "Receiver"), was appointed Receiver over Worldwide, TEGFI, AEI, EFI, their subsidiaries, successors and assigns. Pursuant to that Order, the Receiver was authorized to institute legal proceedings on behalf of the Receivership entities against parties which may have improperly misappropriated money or proceeds from the Receivership entities' investors. Thus, the Receiver then began an investigation into the affairs of those entities. In the course of that investigation, the Receiver learned that TEGFI had transferred at least $5 million to Defendants, Lyn Chong ("Chong"), Kevin Karl Wills, Jr. ("Wills") and Universal Entertainment, LLC ("Universal").

Prior to the Receivership, TEGFI and Worldwide were controlled and operated by Utsick as talent promotion and entertainment businesses. According to the testimony of the Receiver's expert accountant, Morris Berger ("Berger"), both TEGFI and Worldwide were insolvent on October 21, 2005, the date of the $5 million transfer from TEGFI to Universal. Berger, after analyzing TEGFI's books and records, found that the company had a net loss for each year from 1997-2005 amounting to a cumulative loss of $29,233,400. (Berger Aff. ¶ 5.) Berger concluded that "TEGFI and/or WEI did not have the ability to pay its expenses as they accrued and became due on October 21, 2005." (*Id.* ¶ 6.) Although Defendants set forth the testimony of their own certified public accountant, James Feltman ("Feltman"), they provide no evidence that TEGFI or Worldwide were in fact solvent on October 21, 2005.

      B.     **Chong's Employment with Utsick**

Chong, a high school dropout, began working for Utsick and his companies, including Worldwide and TEGFI, in October 2002. Chong had no additional formal education or professional licenses. Although Chong did not sign an employment contract when she accepted Utsick's offer of employment, she earned $10 per hour initially for an annual salary of approximately $23,400. Chong began work as an intern who performed some of the functions of a booking agent. At the same time, according to Chong, Utsick promised to give her a "large compensation" if she stayed loyal and worked for the company.

Later, Chong acted as Utsick's personal assistant. In 2005, Chong's annual base salary was $45,500, almost double her initial salary. In the summer of 2005, after she received a professional evaluation by Utsick, Chong raised the subject of the "large compensation" she had been promised. Utsick asked her what she thought was a fair amount and Chong suggested $5 million. Utsick said that amount was fine. Chong then memorialized the figure in a Compensation Agreement, which states:

> the payment by UTSICK to UNIVERSAL in the amount of Five Million Dollars ($5,000,000.00) is in and for payment for services rendered prior to the date of this agreement. UTSICK understands that UNIVERSAL is under no duty and is not expected to perform any additional services in order to receive complete and full payment of the aforementioned Five Million Dollars ($5,000,000.00)."

(Compensation Agreement at 1.) Chong is the founder, sole member and registered agent of Universal, a limited liability company that never actually did any business, had no office and had no employees. According to Chong, the Compensation Agreement was executed by both Utsick and Chong and was executed as witnesses by three other individuals–Nancy Berek-Mraz, Claudia Jackson and Donna Gonzalez–who worked for Utsick and his companies. On October 21, 2005, Chong then prepared and sent a signed Wire Transfer of $5 million to RBC Centura.[2]

At the time of the transfer of the $5 million, there was less than $1,000.00 in Universal's bank account. Chong resigned from her position with Utsick in December 2005 and has since not worked elsewhere.

### C.    Procedural Background

In this action, the Receiver seeks to recover those funds through causes of action for: (1) actual fraudulent transfer; (2) constructive fraudulent transfer; (3) civil conspiracy; (4) constructive trust; and (5) unjust enrichment. In addition, the Receiver seeks a Declaratory Judgment as to the validity of Chong's Compensation Agreement. In the Motion currently before the Court, the

---

[2] Utsick has averred to having no knowledge about the Compensation Agreement or the subsequent Wire Transfer. In addition, he disputes the authenticity of his signature on the Compensation Agreement and Wire Transfer. Chong, on the other hand, contends that Utsick signed the Compensation Agreement and authorized the Wire Transfer. Although the Receiver agrees that these disputed facts are germane to the case, they contend that they are not at issue in their Motion for Partial Summary Judgment. (Mot. For Partial Summ. J. at 2, n. 2.)

Receiver argues that he is entitled to summary judgment on his claims of (1) constructive fraudulent transfer, (2) unjust enrichment, and (3) the declaratory judgment count. The Court held oral argument on the Motion on July 5, 2007.

## II.     Standard of Review

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen,* 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322-23; *Allen,* 121 F.3d at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

## III.    Discussion

### A.     Constructive Fraudulent Transfer

The Receiver first contends that summary judgment should be granted in his favor on his claim of constructive fraudulent transfer. The Receiver has brought the claim pursuant to the Florida Uniform Fraudulent Transfer Act ("FUFTA"), Fla. Stat. §§ 726.101 et seq., which allows creditors to set aside transfers by a debtor that are found to be fraudulent, as determined under statutory criteria. Specifically, the Receiver has alleged violations under Fla. Stat. §§ 726.105(1)(b) and 726.106(1). Under the former provision, in order to prevail a plaintiff must demonstrate that a debtor made a transfer:

> Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105(1)(b). Likewise, under Section 726.106(1), "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Fla. Stat. § 726.106(1).

### 1. Standing

Defendants first contend that the Receiver lacks standing to bring an action under FUFTA.[3] Defendants note that FUFTA claims may only be prosecuted by a creditor of the transferor and that the Receiver does not stand in the shoes of creditors of the Receivership entities, but acts for the entities themselves. Defendants assert that the Receiver is not a "creditor" within the meaning of the Act and, thus, may not bring a claim under it.

"It is settled that an equity receiver has the power to bring ancillary actions to recover assets which were fraudulently transferred to investors in a Ponzi scheme." *Obermaier v. Arnett*, 2002 WL 31654535, at *3 (M.D. Fla. Nov. 20, 2002) (citing *Commodity Futures Trading Comm'n v. Am. Commodity Group Corp.*, 753 F.2d 862, 866 n. 6 (11th Cir. 1984); *see also In re Wiand*, 2007 WL 963165, at *2 (M.D. Fla. Mar. 27, 2007) ("Numerous courts have found that an equity receiver has standing to maintain fraudulent transfer claims against the recipients of money acquired in a Ponzi

---

[3] Although the Receiver has only moved that summary judgment be granted with respect to Count II, Defendants assert, correctly, that the standing issue is equally relevant to the Receiver's standing to bring Count I under FUFTA.

scheme under various states' Uniform Fraudulent Transfer Acts").[4] The Receiver, however, "may sue only to redress injuries to the entity in receivership." *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995), *cert. denied sub nom. African Enter., Inc. v. Scholes*, 516 U.S. 1028 (1995). Thus, in order for the Receiver to have standing to bring a FUFTA claim in this case, he must show that the Receivership entities would have had statutory standing to bring the claim.

"To utilize the protections of chapter 726 . . . a plaintiff must show that he or she has a 'claim' which qualifies the party as a 'creditor.'" *Friedman v. Heart Inst. Of Port St. Lucie, Inc.*, 863 So.2d 189, 192 (Fla. 2003) (citing § 726.102(4)). A "claim" is "broadly construed and means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* (citing § 726.102(3)).

In this case, the Receiver has brought the claim under FUFTA on behalf of TEGFI, one of the Receivership entities. The Court granted the Receiver broad authority to "institute such actions and legal proceedings . . .as the Receiver deems necessary" to recover funds that had been improperly transferred from the Receivership entities. *SEC v. Utsick*, No. 06-20975-CIV-HUCK/SIMONTON, slip op. at 2-3 (S.D. Fla. Apr. 24, 2006) (order appointing receiver). Moreover, the Court specifically contemplated "recovery and/or avoidance of fraudulent transfers under Florida Statute § 726.101, *et seq.*" *Id.* at 3. Here, the Receiver does not seek to bring the claims on behalf of other external creditors, but only those entities on whose behalf it has specifically been authorized to bring suit.

Having determined that the Receiver is authorized to bring suit on behalf of the Receivership entities, it is clear to the Court that TEGFI, on whose behalf the Receiver brings the FUFTA claims, could have brought such an action. *See, e.g., Wiand*, 2007 WL 963165 at *2 ("The Court finds that the Receiver has standing to bring a FUFTA claim on behalf of the Receivership Entities because the Receivership Entities were injured by the diversion of their funds.") (citing *Scholes*, 56 F.3d at 754). TEGFI has asserted a right to payment and, therefore, has a "claim" against Defendants. The

---

[4] In this case, Utsick and the Yeagers were not engaged in a classic Ponzi scheme, *per se*. Nevertheless, the investment schemes served the same essential purpose: to use misrepresentations to induce financing from unwitting investors. Accordingly, the Court recognizes those cases addressing Ponzi schemes as relevant precedent.

presence of such a "claim" against Defendants makes TEGFI a "creditor" within the broad construction of the statute.

In sum, TEGFI, as a creditor alleging a claim against a debtor, has standing to bring a FUFTA claim against Defendants. The Receiver, having been so authorized by the Court, has standing to assert claims on TEGFI's behalf.

### 2. FUFTA Claims' Merits

Having determined that the Receiver has standing to assert its FUFTA claims, the Court now turns to whether he is entitled to summary judgment on the merits. As an initial matter, Fla. Sta. §§ 726.105(1)(b) and 726.106(1) are analogous "in form and substance" to § 548(a)(2) of the Bankruptcy Code. *In re Tower Envtl., Inc.*, 260 B.R. 213, 222 (Bankr. M.D. Fla 1998) (citing *In re United Energy Corp.*, 944 F.2d 589, 594 (9th Cir. 1991) (construing California's fraudulent transfer statutes, which are virtually identical to Florida's statutes). Because Florida's fraudulent transfer provisions are "essentially identical to those found in the bankruptcy code," the federal bankruptcy law is relevant precedent to this action under FUFTA. *In re Leneve*, 341 B.R. 53, 56 n. 1 (Bankr. S.D. Fla. 2006).

Here, the Receiver contends that he has satisfied all of the elements in his claim for constructive fraudulent transfer and that there is no triable issue of fact with respect to those claims. Defendants, on the other hand, assert (1) that the Receiver has failed to establish a lack of reasonably equivalent value, and (2) that the Receiver has failed to establish that TEGFI was insolvent on the date of transfer. The Court will address these issues in turn.

### a. Reasonably Equivalent Value

The Court engages in a two-part inquiry to determine whether reasonably equivalent value was provided in a transfer. *Tower Envtl, Inc.*, 260 B.R. at 225 (citing *In re R.M.L, Inc.*, 92 F.3d 139, 148 (3d Cir. 1996)). "First, was any value received by the debtor in exchange for the transfer. . . . Second, if value was given was the value given reasonably equivalent of the funds transferred." *In re Evergreen Security, Ltd.*, 319 B.R. 245, 253 (Bankr. M.D. Fla 2003) (citing *Tower Envtl., Inc.*, 260 B.R. at 225). "[V]alue must be assessed on a 'case by case basis' by looking at the surrounding circumstances and by focusing on the precise nature of the transfer." *Id.* Finally, the Eleventh Circuit has counseled that "a determination of whether value was given under Section 548 should focus on

the value of the goods and services provided rather than on the impact the goods and services had on the bankrupt enterprise." *In re Financial Federated Title & Trust, Inc.*, 309 F.3d 1325, 1332 (11th Cir. 2002).

With respect to the first prong, the inquiry is whether the debtor obtained "any benefit" without regard to the cost of services, the nature of the transaction or the good faith of the transferee. *Tower Envtl., Inc.*, 260 B.R. at 225. This determination involves whether the debtor received any "realizable commercial value" as a result of the transaction. *Id.* (citing *R.M.L, Inc.*, 92 F.3d at 149). If it is determined that value was in fact conferred, the Court must undertake the second prong by determining whether the value was reasonably equivalent to the transferred funds. In making this determination, the Court applies a "totality of the circumstances" test. *Id.* That test includes a consideration of factors including "the fair market value of the item or service received compared to the price paid, the arms-length nature of the transaction, and the good faith of the transferee." *Id.*

Here, the $5 million transfer to Chong, as expressed in both Chong's deposition testimony and in the Compensation Agreement, was for "past services rendered." Chong had already been compensated for her work as Utsick's assistant with appropriate salary and bonuses. Importantly, "[v]alue is measured at the time of the transaction and not with reference to past events." *In re James River Coal Co.*, 360 B.R. 139, 166 (Bankr. E.D. Va. 2007) (rejecting argument that past consideration could constitute equivalent value). There is no suggestion that Chong provided TEGFI with anything in return for the $5 million transfer.[5]

Instead, Defendants allege (1) that Defendants' good faith defense makes summary judgment on the issue of reasonably equivalent value inappropriate and (2) that the $5 million transfer was issued in satisfaction of an antecedent debt. The Court easily disposes of the first argument. As stated above, in addressing the first prong of value analysis the Court does not consider the good faith of the transferee. *Tower Envtl., Inc.*, 260 B.R. at 225. It is only once value has been established that the Court will consider the good faith of the transferee.

The Court finds Defendants' second argument equally unpersuasive. Essentially, Defendants

---

[5] Although Chong has alleged that the Utsick had made an oral promise to pay Chong a "large compensation," Defendants have not indicated that this arrangement is relevant to the FUFTA analysis.

8

argue that TEGFI became obligated to pay $5 million to Universal with the execution of the Compensation Agreement on September 29, 2005. Then, on October 21, 2005, when TEGFI transferred the $5 million, it was merely satisfying that antecedent debt.[6] Defendants are correct that under Fla. Stat. § 726.104, the satisfaction of an antecedent debt does not constitute a fraudulent transfer. Defendants, however, have failed to show that TEGFI's transfer of $5 million transfer to Universal constituted such satisfaction. "Under Florida law, an insolvent debtor may make a valid conveyance of property to a creditor for the purpose of either securing or discharging a pre-existing debt, but for such a conveyance to be valid there must be an agreement at the time between the parties that the conveyance shall discharge the debt." *In re Goldberg*, 229 B.R. 877, 884 (Bankr. S.D. Fla. 1998) (citing *Jones v. Wear*, 149 So. 345, 347 (Fla. 1933). Implicit in the *Goldberg* court's understanding of § 726.104 is that the antecedent debt is related to a separate, pre-existing transaction. In this case, the Compensation Agreement and the actual transfer of funds to Universal are all part of one transaction. In order to avail itself of the § 726.104's protection, a transferor may not manufacture an illusory debt in order to freely transfer funds in a manner that would otherwise violate the statute. Such a scenario would permit an end-run around the FUFTA statute. Likewise, "[t]he existence of pre-existing debt precludes the finding that a transfer is fraudulent under § 548 of the Bankruptcy Code, provided that the value of the consideration represents a fair and adequate consideration." *In re Levy*, 185 B.R. 378, 383 (Bankr. S.D. Fla. 1995) (citing *In re Abraham*, 33 B.R. 963 (Bankr. M.D. Fla. 1983) (emphasis added). Here, it is undisputed that neither Chong nor Universal provided any consideration for the $5 million transferred from TEGFI. TEGFI's transfer of $5 million to Universal was thus not a valid satisfaction of antecedent debt because TEGFI received no fair and adequate compensation when it undertook that debt.

Thus, because the Court finds that neither Chong nor Universal conferred any value to TEGFI in exchange for the $5 million, it does not need to consider the second prong. The Receiver has adequately proven that TEGFI received no reasonably equivalent value in exchange for the $5 million transfer to Universal.

---

[6] Fla. Stat. § 726.104(1) provides that "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied . . ."

### b. Solvency

Even if TEGFI did not receive reasonably equivalent value for the $5 million transfer, the Receiver must still show that TEGFI was insolvent at the time of transfer in order to prevail in its FUFTA claim. Fla. Stat. § 726.103(2) provides that "[a] debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." *See also Levin v. Ethan Allen, Inc.*, 823 So.2d 132, 136 (Fla. 4th DCA 2002) (finding debtor "was insolvent at the time . . . as it had not been paying its debts as they became due"). The Receiver contends that it is undisputed that TEGFI was insolvent at the time the $5 million transfer was made. In support of this contention, the Receiver relies primarily upon the findings of Berger, a certified public accountant. Berger, after analyzing TEGFI's books and records, found that the company had a net loss for each year from 1997-2005 amounting to a cumulative loss of $29,233,400.[7] (Berger Aff. ¶ 5.) Berger concluded that "TEGFI and/or WEI did not have the ability to pay its expenses as they accrued and became due on October 21, 2005." (*Id.* ¶ 6.)

Defendants attempt to rebut Berger's affidavit with that of a certified public accountant, Feltman. Feltman does not set forth an opinion as to whether TEGFI was solvent on October 21, 2005. Rather, Feltman devotes his analysis towards a critique of Berger's methods and conclusions. Specifically, Feltman states that Berger failed to consider (a) the existence of any specific creditors or amounts due on October 21, 2005 which were identified as having been due and unpaid as of such date, (b) the cash and liquid assets which were available to TEGFI and/or WEI, (c) the separate legal entities and existence of TEGFI from WEI, and (d) the lack of any actual investor notes presented or schedule which were shown to have existed and were due and payable as of October 21, 2005. (Feltman Aff. ¶ 9.) Other than raising these critiques, Feltman does not opine on any of these four topics.

Although Feltman's analysis raises some question about the competence of Berger's affidavit, a more complete examination of the Berger's testimony–Berger's deposition testimony, in particular–shows that TEGFI was undoubtedly insolvent on October 21, 2005. First, it is important

---

[7] This figure did not include accruals and full payment of interest on loans to investors for the 34-month period covering January 1, 2003 through October 21, 2005., which he estimated to be an additional $30 million.

10

to recognize that Berger is not merely a hired expert who was brought in for the purposes of this litigation. Rather, he has been highly involved in the accounting for the various Receivership entities since April or May of 2005. (Berger Dep. at 18.) Berger has examined all of the documents in the possession of the Receiver and, with that considerable background knowledge, reached the conclusion that TEGFI was insolvent. Moreover, Berger testified that he took a very conservative approach towards the calculation of TEGFI's solvency. (*Id.* at 109.)

Although Berger refers to "TEGFI and/or [Worldwide]" as insolvent in his affidavit, he unequivocally opines in his deposition testimony that both TEGFI and Worldwide were *independently* insolvent. (*Id.* at 40.) And while Berger does not cite to specific notes that were due on October 21, 2005, he states that TEGFI had no revenues for two years and could not have paid any expenditure without accruing more debt. (*Id.* at 54.) Finally, Berger's deposition testimony makes it clear that all parties involved in the decision to appoint the Receiver, including Utsick and his attorney, recognized that the company was "completely defunct and bankrupt and insolvent." (*Id.* at 105-06.)

Berger's affidavit, when viewed in light of his historical familiarity with TEGFI's financial condition and in conjunction with his supporting deposition testimony, concludes that TEGFI was insolvent on October 21, 2005. While Berger's methodology and clarity may not have been ideal, Feltman's mere critique is insufficient to undermine Berger's conclusion. Importantly, Feltman's affidavit is noteworthy in its omission of any opinion as to TEGFI's solvency. In the face of Berger's definitive conclusion, Defendants provide no evidence that TEGFI was in fact solvent on October 21, 2005. In the absence of any legitimate challenge to Berger's conclusion, the Court finds that TEGFI, unable to pay its expenses as they became due on October 21, 2005, was insolvent.

Accordingly, because the Receiver has proven both elements of its FUFTA claim, he is entitled to summary judgment with respect to Count II.

### B.     Unjust Enrichment

Next, the Receiver contends that he is entitled to summary judgment because Defendants unjustly enriched themselves at TEGFI's expense. In order to prove unjust enrichment, the Receiver must show: (1) that he conferred a benefit on Defendants, who had knowledge thereof, (2) that Defendants voluntarily accepted and retained the benefit conferred, and (3) that the circumstances are such that it would be inequitable for Defendants to retain the benefit without paying the value

11

thereof to the Receiver. *Nova Information Sys., Inc. v. Greenwich Ins. Co.*, 365 F3d 996, 1006-07 (11th Cir. 2004); *see also Merkle v. Health Options, Inc.*, 940 So.2d 1190, 1199 (Fla. 4th DCA 2006). The action for "unjust enrichment" exists to prevent wrongful retention of benefits "in violation of good conscience and fundamental principles of justice or equity." *Challenge Air Transport, Inc. v. Transportes Aereos Nacionales, S.A.*, 520 So.2d 323, 324 (Fla. 3d DCA 1988). The remedy of unjust enrichment is available "when to permit the defendant to keep the money would unjustly deprive the plaintiff of his ownership of the money." *Amvest Capital Corp. v. Banco Exterior de Espana, S.A.*, 675 F. Supp. 640, 642 (S.D. Fla. 1987) (quoting *Sharp v. Bowling*, 511 So.2d 363, 365 (Fla. 5th DCA 1987)).

The Receiver asserts that it is undisputed that TEGFI conferred a benefit upon Chong in the form of the $5 million transfer and that Chong has voluntarily accepted and retained the money. Moreover, the Receiver states that it would clearly be inequitable to permit Chong to retain the money. The compensation was solely for "past services" and it represented more money than that earned by all the employees of Utsick's companies *combined* in 2005. Indeed, that $5 million amount is over 100 times greater than Chong's highest annual salary of $45,500. (Chong Dep. at 105-06.) The Receiver contends that the money should properly have gone to the creditors of the Receivership entities.

Defendants challenge the Receiver's motion on four grounds: (1) the Receiver is foreclosed from summary on his unjust enrichment claim because he has adequate remedies at law; (2) the Receiver has failed to demonstrate the requisite inequitable conduct to substantiate a claim for unjust enrichment; (3) the Receiver may not use his unjust enrichment claim to ease his burden of establishing a fraudulent transfer or to create a "preference claim" otherwise unavailable to him; and (4) the Receiver's unjust enrichment claim is barred by the doctrine of *in pari delicto*.[8] The Court addresses these arguments in turn.

### 1. Adequate Remedies at Law

Defendants' first argument, that the Receiver is not entitled to summary judgment on his claim

---

[8] Defendants concede that the Receiver has met the first two elements of their claim for unjust enrichment, that TEGFI conferred a benefit upon Defendants and that Defendants voluntarily accepted and retained that benefit.

for unjust enrichment because adequate remedies at law exist, is unpersuasive. Indeed, Defendants are correct that "under Florida law, the general rule is that if the complaint on its face shows that adequate legal remedies exist, equitable remedies are not available. *Mobil Oil Corp. v. Dade County Esoil Mgmt. Co., Inc.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997) (citing *H.L. McNorton v. Pan American Bank of Orlando*, 387 So.2d 393, 399 (Fla. 5th DCA 1980)). "However, this doctrine does not apply to claims for unjust enrichment. . . . It is only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails." *Id.* Because the Receiver has not asserted a claim based upon an express contract, his claim for unjust enrichment may proceed.

### 2. Inequitable Conduct

Next, Defendants contend that the Receiver is not entitled to summary judgment because he has failed to adequately show inequitable behavior by Defendants. Defendants argue that in order to establish inequitable circumstances between the parties, the Receiver must show either wrongdoing on the part of Chong or that the money was obtained through fraudulent or mistaken means. While those circumstances would certainly justify a claim for unjust enrichment, Defendants go too far. Neither wrongdoing, nor fraud nor mistake are a requirement for a finding of unjust enrichment. Rather, the Court simply needs to examine whether "in equity and good conscience" the Receiver is entitled to reimbursement. *Sharp,* 511 So.2d at 365.

Even viewing the facts in a light most favorable to Defendants, the Court finds that the Receiver has shown that the circumstances are such that it would be inequitable for Defendants to retain the benefit without paying the value thereof to the Receiver. Utsick, at the helm of businesses that were losing money by the millions and owed millions of dollars to investors, many of whom invested their retirement life savings, decided to give a $5 million transfer to his personal assistant, Chong. It is undisputed that Chong provided nothing in exchange for this windfall to either Utsick, TEGFI, Worldwide or any other Receivership entity. The Compensation Agreement states that the $5 million transfer was for "past services" alone. Those past services had already been compensated with a reasonable salary and bonuses. The fact that Utsick issued this exorbitant transfer when he owed significant debts to various creditors only exacerbates the unjust and inequitable nature of the conveyance. The Court does not need to make a finding that Chong received the money in bad faith or that she played any role in misappropriating funds from the Receivership entities in order to find

that the transfer was inequitable. The fact of the matter is that, assuming Defendants' version of the circumstances surrounding the $5 million transfer, Utsick unjustly deprived his legitimate creditors of $5 million by making an unjustifiable and unsupportable payment to his personal assistant while getting absolutely nothing in return. The Court has no trouble reaching the conclusion that "in equity and good conscience" the Receiver is entitled to recover those funds.

### 3. Use of Equitable Claim to Ease Burden

Next, Defendants imply that the Receiver is improperly using an action for unjust enrichment as a means to ease his burden of proof on his claims for fraudulent or preferential transfer. Defendants, aside from stating the general proposition that this should not be done, fail to raise any viable argument or legal support on this point. Defendants fail to show how the Receiver is attempting to misuse his allegation of unjust enrichment to ease his burden of proof on other claims. Accordingly, this argument does not raise any issue for the Court to consider.

### 4. *In Pari Delicto*

Defendants finally assert that the Receiver is not entitled to summary judgment on his claim for unjust enrichment because of the equitable principle of *in pari delicto*, which states that "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." Black's Law Dictionary 806 (8th ed. 2004). Case law, however, indicates that the doctrine of *in pari delicto* does not apply when a Receiver has taken over for the wrongdoing entity. 'The appointment of the receiver remove[s] the wrongdoer from the scene. . . . [T]he defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated." *Scholes*, 56 F.3d at 754. Florida's Second District Court of Appeal was also "inclined to believe that the receiver may also pursue certain claims that would be barred by the defense of in pari delicto if pursued by the corporation that was placed in receivership." *Freeman v. Dean Witter Reynolds, Inc.*, 865 So.2d 543, 551 (Fla. 2d DCA 2003) (citing *Scholes*, 56 F.3d at 754); *see also Welt v. Sirmans*, 3 F. Supp. 2d 1396, 1403 (S.D. Fla. 1997) (acknowledging that defenses based on the party's unclean hands or inequitable conduct do not generally apply against a party's receiver). Indeed, that logic prevails in this instance. The mere fact that Utsick was inappropriately transferring funds to Chong should not prevent the Receiver, who acts to do nothing more than salvage the assets of the Receivership entities, from recovering those funds. The Court fails to see how the purposes of the principle of *in pari delicto*

14

would be served by preventing recovery on account of Utsick's wrongdoing. Thus, the Receiver's unjust enrichment claim is not barred by the affirmative defense of *in pari delicto*.

Having disposed of all of Defendants' arguments against the Receiver's unjust enrichment claim, the Court finds that the Receiver has shown that there exists no genuine issue of material fact and that the Receiver is entitled to judgment as a matter of law that Defendants have been unjustly enriched.[9] The Receiver is thus entitled to restitution of the $5 million transfer.

### IV.  Conclusion

For the all the reasons set forth above, the Receiver is entitled to summary judgment with respect to both Count II and Count V.[10]  Accordingly, it is hereby

ORDERED that the Receiver's Motion for Partial Summary Judgment is GRANTED.

DONE AND ORDERED in Chambers this 11th day of July, 2007.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All Counsel of Record

---

[9] As an aside, at oral argument Defendants indicated for the first time that they believed that they were entitled to a trial by jury on the Receiver's unjust enrichment claim. The Court disagrees. The claim for unjust enrichment is an equitable one that would be heard by the Court and not a jury if the Receiver was not entitled to summary judgment. *See, e.g., Media Servs. Group, Inc. v. Bay Cities Commc'ns, Inc.*, Case No. 3:98cv15/RV (N.D. Fla. Aug. 5, 1999). Given that the Court has reached the determination that summary judgment is appropriate on the unjust enrichment claim, it is wholly improbable that Defendants would be able to make a reasonable showing at trial that they have not been unjustly enriched based on Defendants' version of the facts.

[10] Because the Court has granted summary judgment to the Receiver with respect to Counts II and V, it need not, and therefore does not, reach a determination as to the Receiver's motion for summary judgment on Count VI, the claim for declaratory judgment.